UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KEITH CONFUSIONE, RANDOLPH BRANNIGAN,     Docket No.: 21-cv-00001
JAMES R. STEVENS and CURTIS SHERROD, on behalf     (JMA) (AYS)
of themselves and all others similarly situated,

                      Plaintiffs,     **THIRD AMENDED COMPLAINT**

-against-

AUTOZONERS, LLC,     *Class Action*

                      Defendant.     *Jury Trial Demanded*
------------------------------------------------------------------------X

       Plaintiffs, Keith Confusione, Randolph Brannigan, James R. Stevens and Curtis Sherrod ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, the Romero Law Group PLLC, complaining of the Defendant, AutoZoners, LLC ("Defendant" or "AutoZone"), allege as follows:

## NATURE OF THE ACTION

       1.     Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees of Defendant who worked for AutoZone in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover statutory damages for violations of New York Labor Law §§ 191, 198 ("New York Labor Law").

       2.     Plaintiffs seek injunctive and declaratory relief, liquidated damages, attorneys' fees and costs and other appropriate relief pursuant to NYLL § 198.

       3.     AutoZone is the nation's leading retailer and a leading distributor of automotive replacement parts and accessories.

       4.     In fiscal year 2020, AutoZone reached a record $12.6 billion in sales.

5.  As of August 29, 2020, AutoZone operated approximately 204 retail stores in the State of New York.

6.  As of August 29, 2020, AutoZone employed approximately 100,000 persons. About 91 percent of Defendant's employees were employed in AutoZone stores or in direct field supervision.

7.  During the six years prior to the commencement of this action through in or about mid-2022, Defendant compensated Plaintiffs and all other hourly-paid employees who worked as retail-sales clerks, delivery drivers, and maintenance technicians in the State of New York on a bi-weekly basis in violation of New York Labor Law, Article 6, §§ 191.

8.  During the six years prior to the commencement of this action through in or about mid-2022, Defendant failed to properly pay Plaintiffs and other hourly-paid manual workers their wages within seven calendar days after the end of the week in which these wages were earned. Thus, Defendant failed to provide timely wages to Plaintiffs and all other similar manual workers.

9.  Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law, Article 6, §§ 191, 198. ("NYLL").

10. Store managers, and others with executive positions, who are paid fixed salaries, are not members of the classes that Plaintiffs seek to represent in this action.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d). This is a putative class action in which there are 100 or more members in the proposed class, any member of the proposed class is a citizen of a state and any

defendant is a citizen of a different state, and the amount in controversy exceeds the sum of $5,000,000.00 in the aggregate.

12. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Plaintiffs suffered the losses at issue in this District.

13. Defendant operates more than 50 stores within this District, including stores located in Baldwin, Bay Shore, Bellmore, Bethpage, Bohemia, Brentwood, Brooklyn, Central Islip, Commack, Copiague, East Meadow, East Patchogue, Elmont, Flushing, Hauppauge, Hempstead, Howard Beach, Huntington Station, Jackson Heights, Jamaica, Levittown, Massapequa, Mastic, Medford, Middle Island, North Babylon, Port Jefferson Station, Queens Village, Ridgewood, Riverhead, Selden, Shirley, South Ozone Park, Staten Island, and Uniondale.

## PARTIES

14. Plaintiff, Keith Confusione, is a resident of the State of New York.

15. Plaintiff, Randolph Brannigan, is a resident of the State of New York.

16. Plaintiff, James R. Stevens, is a resident of the State of New York.

17. Plaintiff, Curtis Sherrod, is a resident of the State of New York.

18. Defendant is a Nevada corporation with its principal place of business in Memphis, Tennessee. The sole member of Defendant, AutoZoners, LLC, is AutoZone Stores, Inc., a Nevada corporation with its principal place of business in Memphis, Tennessee.

19. At all times relevant, Plaintiff, Keith Confusione, was an "employee" within the meaning of NYLL § 190(2) and a "manual worker" within the meaning of NYLL § 190(4).

3

20. At all times relevant, Plaintiff, Randolph Brannigan, was an "employee" within the meaning of NYLL § 190(2) and a "manual worker" within the meaning of NYLL § 190(4).

21. At all times relevant, Plaintiff, James R. Stevens, was an "employee" within the meaning of NYLL § 190(2) and a "manual worker" within the meaning of NYLL § 190(4).

22. At all times relevant, Plaintiff, Curtis Sherrod, was an "employee" within the meaning of NYLL § 190(2) and a "manual worker" within the meaning of NYLL § 190(4).

23. At all times relevant, Defendant was an "employer" within the meaning of NYLL § 190(3).

## FACTUAL ALLEGATIONS

24. Autozoners, LLC is the employer of personnel who work at AutoZone Stores.

25. Plaintiff, Keith Confusione, was employed by Defendant as an hourly-paid, manual worker who worked as a retail sales clerk at Defendant's store located in Central Islip from in or about September 2014 until on or about February 8, 2020.

26. Plaintiff Confusione's job duties included retrieving auto parts for customers; assisting customers with the installation of wipers blades, batteries and light bulbs; operating the cash register; stocking shelves; merchandising; sweeping and mopping the store; wiping the service counter; and conducting inventory, which required substantial periods of standing, walking and lifting to complete these duties.

27. Plaintiff, Randolph Brannigan, was employed by Defendant as an hourly-paid, manual worker who worked as a sales clerk at AutoZone from in or about June 2019 until in or about February, 2020.

28. Plaintiff Brannigan's job duties included retrieving auto parts for customers; assisting customers with the installation of wipers blades, batteries and light bulbs; operating the

cash register; unloading pallets; stocking shelves; merchandising; sweeping and mopping the store; wiping the service counter; and conducting inventory, which required substantial periods of standing, walking and lifting to complete these duties.

29. Plaintiff, James R. Stevens, was employed by Defendant as an hourly-paid, manual worker who worked as a retail sales clerk at Defendant's store located in Commack from in or about October 2021 and continues to be employed as of the date of this filing.

30. Plaintiff Steven's job duties included retrieving auto parts for customers; assisting customers with the installation of wipers blades, batteries and light bulbs; operating the cash register; stocking shelves; unloading parts and merchandise from pallets and stocking those items on the store's shelves, tasks that frequently took his entire work day during multiple days per week; lifting, carrying, moving and stocking heavy automotive parts that frequently weighed sixty pounds or more; merchandising; sweeping and mopping the store; wiping the service counter; removing garbage; and conducting inventory. Plaintiff Stevens also assisted with performing the duties of a delivery driver, during which he was responsible for picking up, carrying and loading parts for delivery orders, often including handling heavy automotive parts that frequently weighed sixty pounds or more; driving the delivery vehicle to transport parts to customers; unloading parts; and picking up returns. Plaintiff Stevens was required to engage in substantial periods of driving, standing, walking and lifting to complete these duties. Moreover, Defendant repeatedly instructed Plaintiff Stevens that he was never permitted to sit down during his shifts.

31. Plaintiff, Curtis Sherrod, was employed Defendant as an hourly-paid delivery driver at Defendant's location at 8214 Foster Avenue, Brooklyn, New York from in or about August 2016 until in or about late 2019 or early 2020.

32. Plaintiff Sherrod's job duties included picking up, carrying and loading parts for delivery orders, often including handling heavy automotive parts that frequently weighed sixty pounds or more; driving the delivery vehicle to transport parts to customers; unloading parts; and picking up returns. When Plaintiff Sherrod wasn't making deliveries, Plaintiff Sherrod performed numerous duties, including by not limited to, retrieving auto parts for customers; assisting customers with the installation of wipers blades, batteries and light bulbs; stocking shelves; unloading parts and merchandise from pallets and stocking those items on the store's shelves; lifting, carrying, moving and stocking heavy automotive parts that frequently weighed sixty pounds or more; cleaning; and any other duties as may be needed. Plaintiff Sherrod was required to engage in substantial periods of driving, standing, walking and lifting to complete these duties.

33. During the six years prior to the commencement of this action until the present, Plaintiffs and other Class Members spent more than twenty-five percent of their hours worked each week for Defendant performing physical – and therefore manual – tasks. Indeed, Plaintiffs spent the majority of their hours worked each week for Defendant performing physical – and therefore manual – tasks.

34. During the six years prior to the commencement of this action through in or about mid-2022, Defendant failed to pay Plaintiffs and similarly situated persons who have worked in hourly-paid positions as sales clerks, delivery drivers and maintenance technicians in the State of New York "on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned" as required by NYLL § 191.

35. Instead, during the six years prior to the commencement of this action through in or about mid-2022, Defendant paid Plaintiffs and similarly situated persons who have worked in

hourly-paid positions as sales clerks, delivery drivers and maintenance technicians on a bi-weekly basis pursuant to its payroll policy in violation of NYLL § 191.

36. Plaintiffs and Class Members are manual workers who depend upon their wages for sustenance and suffer harm that is particularly acute when their wages are delayed, and they are temporarily deprived of their earned wages.

37. Each time Plaintiffs received late compensation for the work that they performed, Defendant underpaid them for the work they performed.

38. Every time that Defendant failed to pay Plaintiffs and Class Members their wages earned within seven days of the end of their workweeks, Defendant deprived them of the use of money that belonged to them. As a result, Plaintiffs and Class Members were unable to do those things that every person does with their money, such as paying bills or buying goods that he needed or wanted to buy.

39. By way of example, these delayed wages prevented Plaintiffs and Class Members from spending money earned on a host of everyday expenses and to provide for their basic needs including, but not limited to, purchasing food and groceries, rent or mortgage payments, gas or heating oil, utilities, medical supplies and services, insurance, automobile payments, fuel for vehicles, education tuition and expenses, daycare or childcare, public transportation, and other basic living expenses.

40. By Defendant's failure to pay Plaintiffs and Class Members their wages earned within seven days of the end of their workweeks and retaining money that belonged to Plaintiffs and Class Members, Plaintiffs and Class Members lost the time value of money.

41. Additionally, Defendant's delayed payment of wages forced Plaintiffs and Class Members to forgo purchasing goods and services until a later time after their receipt of their late

paid wages. Because of inflation, being an ever increasing scourge throughout the Covid-19 pandemic and recent events, Plaintiffs and Class Members were required to pay increased prices for the goods and services that they otherwise would have purchased at an earlier date were their wages lawfully paid on a weekly basis.

42. By retaining these wages earned beyond the timeframes set by NYLL § 191, Defendant benefitted from the time value of money and their free use of such funds, at the expense of Plaintiffs and Class Members. For example, during the interval of these delayed wage payments, Defendant was free to utilize those funds to purchase goods and services, pay rent or mortgages on its retail stores, pay installment payments and purchase fuel for its company-owned vehicles, pay for marketing and other business expenses, and accrue interest on those funds in its business accounts.

43. Throughout his employment, Plaintiff Confusione suffered significant harm because of Defendant's pay practices. For example, because Defendant failed to pay him wages earned within seven days of the end of his workweeks, Plaintiff Confusione: (1) repeatedly incurred overdraft charges because his necessary expenditures exceeded the amount of funds in his bank accounts, which often occurred on a monthly or sometimes more frequent basis; (2) was repeatedly unable to make payments for his credit card account and repeatedly incurred late payment fees and additional interest charges on his credit card balance that he otherwise would not have incurred; (3) on other occasions, was able to only pay a portion of his credit card balance and repeatedly incurred additional interest charges on his credit card balance that he otherwise would not have incurred; (4) repeatedly incurred interest charges on credit card charges when he was forced to use his credit card to purchase items that he would otherwise been able to afford to purchase directly with cash if he was timely paid his wages earned; (5) was unable to timely pay

8

all or portions of his rent payments for his residence on multiple occasions and repeatedly incurred late fee penalties for these late rent payments; (6) was repeatedly required to obtain loans from private individuals in order to pay his rent payments and other bills, which required payment of interest on the balance of these loans; (7) was unable to pay all or portions of his telephone bill, requiring him to incur additional fees and the loss of the use of his telephone entirely for an extended period until payments were fully made; (8) repeatedly suffered an additional loss of the use of his money – even after it was paid by Defendant – as he was forced to expend those funds to pay these late fees, interest and costs due to Defendant's delayed payment of wages; and (9) was repeatedly unable to use his earned money to pay bills and purchase other goods and services because he lacked access to his wages until a later date.  These harms, including additional fees, costs, and interest would not have been incurred if Plaintiff Confusione's wages were timely paid in accordance with NYLL § 191.

44. Throughout his employment, Plaintiff Brannigan suffered significant harm because of Defendant's pay practices.  For example, because Defendant failed to pay him wages earned within seven days of the end of his workweeks, Plaintiff Brannigan: (1) was repeatedly unable to make payments for his credit card account and repeatedly incurred late payment fees and additional interest charges on his credit card balance that he otherwise would not have incurred; (2) on other occasions, was able to only pay a portion of his credit card balance and repeatedly incurred additional interest charges on his credit card balance that he otherwise would not have incurred; (3) repeatedly incurred interest charges on credit card charges when he was forced to use his credit card to purchase items that he would otherwise been able to afford to purchase directly with cash if he was timely paid his wages earned; (4) was repeatedly unable to timely pay all or portions of his electricity bill and repeatedly incurred late fee penalties and interest charges on the balance of

9

these unpaid bills; (5) was repeatedly unable to timely pay all or portions of his natural gas bill and repeatedly incurred late fee penalties and interest charges on the balance of these unpaid bills; (6) was unable to save funds in bank accounts or purchase investments to accrue interest and financial gains, which he otherwise would have done; (7) was unable to use this money to pay tuition for higher education, which he otherwise would have done; (8) repeatedly suffered an additional loss of the use of his money – even after it was paid by Defendant – as he was forced to expend those funds to pay these late fees, interest and costs due to Defendant's delayed payment of wages; and (9) was repeatedly unable to use his earned money to pay bills and purchase groceries and other goods and services because he lacked access to his wages until a later date. These harms, including additional fees, costs, and interest would not have been incurred if Plaintiff Brannigan's wages were timely paid in accordance with NYLL § 191.

45. Throughout his employment, Plaintiff Stevens suffered significant harm because of Defendant's pay practices. For example, because Defendant failed to pay him wages earned within seven days of the end of his workweeks, Plaintiff Confusione: (1) was repeatedly unable to pay all or a portion of his various bills or utilities, causing him to make late payments; (2) was unable to timely pay all or portions of his rent payments for his residence on multiple occasions, causing him to make late payments; (3) was repeatedly unable to pay all or a portion of his telephone bill, causing him to make late payments; (4) repeatedly suffered an additional loss of the use of his money – even after it was paid by Defendant – as he was forced to expend those funds to pay late fees, interest and costs caused by late or partial payments of his bills and rent payments due to Defendant's delayed payment of wages; (5) was repeatedly unable to use his earned money to pay bills and purchase other goods, services or food because he lacked access to his wages until a later date; and (6) repeatedly had to forgo certain meals because he lacked the funds to pay for food due

to Defendant's delayed payment of wages. These harms, including but not limited to additional fees, costs, and interest would not have been incurred if Plaintiff Steven's wages were timely paid in accordance with NYLL § 191.

46. Throughout his employment, Plaintiff Sherrod suffered significant harm because of Defendant's pay practices. For example, because Defendant failed to pay him wages earned within seven days of the end of his workweeks, Plaintiff Sherrod: (1) was repeatedly unable to pay all or a portion of his various bills or utilities, causing him to make late payments; (2) was repeatedly unable to timely pay all or portions of his rent payments for his residence on multiple occasions and repeatedly incurred late fee penalties for these late rent payments; (2) was repeatedly required to obtain loans or other financing in order to pay his bills or purchase goods and services, which required payment of interest on the balance of these loans or financing plans; (3) was repeatedly unable to pay all or portions of his telephone bill, requiring him to incur additional fees; (4) repeatedly suffered an additional loss of the use of his money – even after it was paid by Defendant – as he was forced to expend those funds to pay these late fees, interest and costs due to Defendant's delayed payment of wages; and (5) was repeatedly unable to use his earned money to pay bills and purchase other goods, services or food because he lacked access to his wages until a later date. These harms, including additional fees, costs, and interest would not have been incurred if Plaintiff Sherrod's wages were timely paid in accordance with NYLL § 191.

47. Defendant treated and paid Plaintiffs and the Class Members in the same or similar manner, and subjected them to the same corporate-wide payroll practices.

48. Defendant's pay practices harmed Plaintiffs and the Class Members in the same or similar manner.

## RULE 23 CLASS ACTION ALLEGATIONS
## NEW YORK LABOR LAW

49. Plaintiffs bring New York Labor Law claims on behalf of themselves and a class of persons under Fed. R. Civ. P. 23 consisting of all persons who are currently, or have been, employed by the Defendant in hourly-paid positions such as retail-sales clerks, delivery drivers or maintenance technicians in the State of New York at any time during the six (6) years prior to the filing of the initial Complaint and the date of judgment in this action (hereinafter referred to as the "Class" or the "Class Members").

50. Upon information and belief, Defendant employed persons who worked in various positions including, but not limited to, persons who worked as retail-sales clerks, delivery drivers, and maintenance technicians. Retail-sales clerks spend large amounts of their time stocking shelves, unloading pallets of parts from truck deliveries, cleaning, replacing and installing windshield wipers, batteries and other parts on customer cars, and other physical tasks. Delivery drivers drive delivery vehicles to transport parts to commercial customers, including the loading and unloading of parts. Maintenance technicians perform building and ground maintenance and repairs at AutoZone stores.

51. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendant. Upon information and belief, there are more than 1,000 Class Members who have worked for Defendant in hourly-paid positions such as retail-sales clerks, delivery drivers and maintenance technicians in the State of New York at any time during the six (6) years prior to the filing of the initial Complaint. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names

and addresses are readily available from Defendant. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

52. The proposed Class is numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendant, upon information and belief, there are more than 1,000 individuals who are currently, or have been, employed by Defendant in hourly paid retail sales, delivery driver and maintenance technician positions at any time during the six (6) years prior to the filing of the initial Complaint.

53. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including, but not limited to, whether Defendant paid Plaintiffs and Class Members on a bi-weekly or semi-monthly basis in violation of NYLL § 191, the nature and extent of the Class-wide injury and the appropriate measure of damages for the class.

54. Plaintiffs' claims are typical of the claims of the Class that they seeks to represent. During the six years prior to the commencement of this action through in or about mid-2022, Defendant failed to pay Plaintiffs "on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned," as required by NYLL § 191. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.

55. All the Class Members were subject to the same corporate practices of Defendant. Defendant's corporate-wide policies and practices affected and harmed all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each

Class Member. Plaintiffs and other Class Members sustained similar losses, injuries, harms and damages arising from the same unlawful policies, practices, and procedures.

56. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs have retained counsel competent and experienced in class actions, wage and hour litigation, and employment litigation.

57. A class action is superior to other available methods for the fair and efficient adjudication of litigation, particularly in the context of wage and hour litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in court against a corporate defendant.

58. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant savings of these costs. The prosecution of separate actions by individual Class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Class members, establishing incompatible standards of conduct for the Defendant. Moreover, the issues in this action can be decided by means of common, class-wide proof.

59. The members of the Class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

60. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that may result in inconsistent judgments about Defendant's practices.

61. Furthermore, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

### FIRST CLAIM FOR RELIEF
### (FREQUENCY OF PAYMENT VIOLATION – NYLL § 191)

62. Plaintiffs and Class Members allege and incorporate by reference all allegations in all preceding paragraphs.

63. Plaintiffs and Class Members are manual workers as defined by the New York Labor Law.

64. Defendant was required to pay the Plaintiffs and Class Members on a weekly basis, and no later than seven days after the end of the workweek in which the wages were earned.

65. During the six years prior to the commencement of this action through in or about mid-2022, Defendant failed to pay Plaintiffs and Class Members on a weekly basis and instead paid Plaintiffs and Class Members bi-weekly or semi-monthly in violation of NYLL § 191.

66. Due to Defendant's violations, Plaintiffs and Class Members are entitled to damages equal to the total of the delayed wages, reasonable attorneys' fees and costs of this action.

### JURY TRIAL DEMANDED

67. Plaintiffs request a trial by jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, pray for the following relief:

(i.) Issuing an order restraining Defendant from any retaliation against Plaintiffs or Class Members for participation in any form in this litigation;

(ii.) Issuing a declaratory judgment that the practices complained of in this Third Amended Complaint are unlawful under the NYLL and the supporting New York State Department of Labor Regulations;

(iii.) Certifying this action as a Class Action pursuant to Fed. R. Civ. P. 23;

(iv.) Designating Plaintiffs as representatives of the Class and counsel of record as Class Counsel;

(v.) Awarding damages pursuant to NYLL §§ 191, 198;

(vi.) Awarding attorneys' fees incurred in prosecuting these claims;

(vii.) Awarding costs and expenses incurred in prosecuting these claims;

(viii.) Awarding pre-judgment and post-judgment interest as permitted by law; and

(vii.) Granting such other and further relief as this Court deems just and proper.

Dated: Hauppauge, New York
August 21, 2023

                                      ROMERO LAW GROUP PLLC
                                      *Attorneys for Plaintiffs*
                                      490 Wheeler Road, Suite 250
                                      Hauppauge, New York 11788
                                      Tel.: (631) 257-5588

By: _____
      DAVID D. BARNHORN, ESQ.
      PETER A. ROMERO, ESQ.